UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

LEONA C. MCCOULLUM,

                              Plaintiff,                    DECISION AND ORDER

-vs-
                                                           1:19-CV-0539 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

———————————————————

## INTRODUCTION

Plaintiff Leona C. McCoullum ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Nov. 13, 2019, ECF No. 10; Def.'s Mot., Jan. 9, 2020, ECF No. 13.   For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is denied, the Commissioner's motion (ECF No. 13) is granted, and the Clerk of Court is directed to close this case.

## BACKGROUND

The Court assumes the reader's familiarity with the underlying facts and procedural history in this case. However, the Court provides a brief recitation of the relevant facts as they pertain to Plaintiff's arguments before this Court.

Plaintiff began treatment with the Monsignor Carr Institute, Catholic Charities of Buffalo ("MCI") in August 2015. Transcript ("Tr.") 875, Jul. 22, 2019, ECF No. 6. In September 2015, Plaintiff's licensed mental health counselor at MCI at the time, Vondalyn Lane, wrote a letter stating that Plaintiff had been diagnosed with adjustment disorder, mixed with depression and anxiety; that Plaintiff would see a psychiatrist at MCI for medication; and that in MCI's professional opinion Plaintiff was unable to work or attend a training program at that time. Tr. 875. Ms. Lane did not provide a specific functional assessment with her letter.

In a "Mental Status Exam" dated October 15, 2015, Dr. Loida Reyes – the MCI psychiatrist referenced in Lane's letter – indicated that Plaintiff did not report delusions, was not a danger to self or others, was within normal limits of cognition, and was of average intelligence, though mildly impaired in her ability to make reasonable decisions and with difficulty acknowledging the presence of psychiatric problems. Tr. 747. Dr. Reyes' notes indicate the follow-up plan for Plaintiff's treatment would include therapy and counseling, as well as medication. Tr. 767.

On January 27, 2016, Dr. Susan Santarpia, Ph.D., performed a consultative examination on Plaintiff at the request of the Commissioner. Tr. 631. Dr. Santarpia noted the following findings on her mental status examination: Plaintiff's thought processes were coherent and goal directed; mood was euthymic; Plaintiff was oriented to person, place, and time; attention was mildly impaired due to nervousness or possible lack of effort; recent and remote memory skills were intact; cognitive

2

functioning was estimated to be in the average to low-average range of ability; insight and judgment were poor. Tr. 633. Based on these findings, Dr. Santarpia diagnosed Plaintiff with adjustment disorder with mixed anxiety and depressed mood, and made the following medical source statement: "She presents as able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, relate adequately with others, and appropriately deal with stress within normal limits." Tr. 633. Dr. Santarpia also indicated that Plaintiff demonstrated a mild impairment in performing complex tasks independently and making appropriate decisions. Tr. 633.

On May 31, 2016, an MCI psychiatrist[1] completed a "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" on Plaintiff. Tr. 880. That assessment indicated that Plaintiff suffered from panic disorder, agoraphobia, and post-traumatic stress disorder ("PTSD"), all of which were expected to last for more than 12 months. Tr. 880. The psychiatrist did not complete the section of the form that specifically assessed Plaintiff's mental functioning in such areas as "understands and remembers instructions," "makes simple decisions," and "appears able to function in a work setting at a consistent pace." Tr. 881. Instead, the psychiatrist identified the following limitation on work activities: "patient cannot work [illegible] people due to anxiety."

---

[1] The signature on the form is illegible, but the signing party represents that he or she is a Board-certified psychiatrist. Tr. 881. Presumably, the psychiatrist was Dr. Reyes.

Tr. 881.

Dr. Reyes completed another, almost identical, assessment on July 28, 2016. Tr. 885. As in the May 31, 2016 assessment, Dr. Reyes did not complete an evaluation of Plaintiff's specific mental functioning, but simply noted that Plaintiff "can't [illegible] around people due to severe anxiety." Tr. 885.

In addition to the assessments mentioned above, Plaintiff met on several occasions with Dr. Reyes for fifteen-minute-long "medication management" sessions, most of which included a "mini-mental status" exam. On August 25, 2016, Dr. Reyes indicated that Plaintiff's mood was notable in that she was "less anxious"; no other significant change was indicated. Dr. Reyes again saw Plaintiff on November 1, 2016, and noted that her mood was anxious and that she was having sleep problems. At Plaintiff's November 29, 2016 session, Dr. Reyes indicated that Plaintiff was "depressed and lonely" during the holiday season. Tr. 776.

On January 24, 2017, Plaintiff indicated to Dr. Reyes that she had been to the emergency room for anxiety, that she had been depressed, and that she had exhibited obsessive compulsive cleaning behaviors. Tr. 772. At her session on February 21, 2017, Dr. Reyes noted that Plaintiff stated "she has been stressed out and not feeling well physically," and the "mood" category of mini-mental status exam was notable in that Plaintiff was "very anxious and depressed," but no other significant changes were reported or observed. Tr. 770. Plaintiff was again anxious on March 16, 2017, though no other significant changes were observed. Tr. 768

On August 31, 2017, Nurse Practitioner Diana Page ("NP Page"), also at MCI, completed a third "Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination" on Plaintiff. Tr. 884. NP Page indicated that Plaintiff had an unspecified bipolar disorder, and panic disorder with agoraphobia. She also completed a checklist of mental functional limitations, in which she indicated that Plaintiff: showed no evidence of limitations maintaining basic standards of hygiene; was moderately limited in understanding and carrying out instructions, making simple decisions, and interacting appropriately with others; and was very limited in maintaining concentration, maintaining socially appropriate behavior, and appearing able to function in a work setting at a consistent pace. Tr. 891. NP Page concluded that these limitations precluded Plaintiff from working in competitive employment, and that Plaintiff should be reassessed in six months. Tr. 891.

On September 25, 2017, mental health therapist Giseline Michel completed a "Mental Status Exam Form" on Plaintiff at a different MCI facility to begin treatment of Plaintiff's cannabis dependence. Tr. 846. Michel found that Plaintiff's appearance, stature, activity, perception, and thought content were all within normal limits. Tr. 845. Michel observed that Plaintiff's thought process was logical; attitude was cooperative; speech was clear; cognition, insight and judgment were within normal limits; and her intelligence was estimated as average. Tr. 845–846.

In October 2017, licensed mental health counselor Janelle Pysz completed a

"Comprehensive Assessment" of Plaintiff. Tr. 827. Ms. Pysz indicated that Plaintiff suffered from panic disorder with agoraphobia, and generalized anxiety. Tr. 827. In the functional domain, Ms. Pysz indicated that Plaintiff did *not* have clinically indicated needs in the following functional domains: maintain financial benefits, money management, individual care skills, transportation, time management, anger/aggression, antisocial behaviors, impulsivity, communication skills, dependency issues, social/interpersonal skills, coping/symptom management skills, cognitive problems, compulsive behavior, mood instability, obsession, thought/perceptual disorders, high risk behaviors, and safety/self-preservation skills. Tr. 820–825. According to Ms. Pysz's assessment, Plaintiff's only "current need areas" were substance use/addiction and anxiety. Tr. 823. This assessment was consistent with a previous "Comprehensive Assessment" that does not appear to be included in full in the record.[2] *See* Tr. 733–739. As a result of this assessment, Ms. Pysz worked with Plaintiff to develop an "initial individualized action plan" with the goals of "stop using marijuana for sleep," and "learn how to manage anxiety." Tr. 847–848.

On March 1, 2018, Ms. Pysz completed a "Mental Residual Functional Capacity Questionnaire" at the request of Plaintiff's attorney. Tr. 869. Ms. Pysz stated that Plaintiff struggled with moderate to severe anxiety, and gave Plaintiff the prognosis of "fail." Tr. 869. Of the twenty-five "mental abilities and aptitudes" listed on the

---

[2] There is no date on the "Adult Comprehensive Assessment v2" that appears in the transcript from pages 733 to 738, and the signature page is missing. However, it can be inferred that the record was prior to Prysz's assessment because Plaintiff's age is listed as 55 on Prysz's assessment, and 54 on the undated assessment.

checklist on that form, Ms. Pysz rated Plaintiff as "unable to meet competitive standards" on each and every one. Tr. 871–872. As an explanation, Ms. Pysz wrote only that Plaintiff's "anxiety/panic [a]ffects her ability to function in work setting." Tr. 872. Ms. Pysz indicated that Plaintiff was capable of managing benefits in her own best interests, that she could not assess whether Plaintiff was a malingerer, and that Plaintiff could not, in her opinion, engage in full-time competitive employment on a sustained basis. Tr. 873.

## PROCEDURAL HISTORY

Plaintiff filed her DIB application on November 30, 2015, alleging an onset date of January 1, 2012. Tr. 343. Plaintiff also filed an application for SSI benefits on November 30, 2015. Tr. 350. In her disability report, Plaintiff reported several conditions as limiting her ability to work: adjustment disorder, depression, anxiety, high blood pressure, diabetes, high cholesterol, asthma, and previous vulva cancer. Tr. 380. On February 10, 2016, the Commissioner notified Plaintiff that she did not qualify for either DIB or SSI benefits. Tr. 284. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 294.

Plaintiff's request was approved and the hearing was held on March 20, 2018 in Buffalo, New York. Tr. 218. Plaintiff appeared with her attorney, Nicholas DiVirgilio. Tr. 218. Vocational expert Joey Kilpatrick testified by telephone. Tr. 251–259. Attorney DiVirgilio argued that Plaintiff was unable to work due to the following severe impairments: anxiety, agoraphobia, and depression. Tr. 219. He conceded that

Plaintiff was not alleging any exertional impairments. Tr. 236.

In her decision on July 16, 2018, the ALJ found that Plaintiff was not disabled, and denied both DIB and SSI benefits. Tr. 211. On February 28, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARDS

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for a special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537

F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

When a mental impairment is alleged, the regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation process. *Petrie v. Astrue*, 412 Fed. Appx. 401, 408 (2d Cir. 2011) (citing 20 C.F.R. §404.1520a). First, the ALJ must evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether he or she has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). If the claimant does have such an impairment, the ALJ must rate the claimant's functional limitations in four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3). The ALJ must rate the degree of limitation in each of these areas using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). After rating the degree of functional limitation resulting from the claimant's impairment(s), the ALJ must then determine the severity of the mental impairment(s). 20 C.F.R. § 404.1520a(d).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final

decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). A reviewing court must first determine "whether the Commissioner applied the correct legal standard." *Jackson v. Barnhart*, No. 06-CV-0213, 2008 WL 1848624, at *6 (W.D.N.Y. Apr. 23, 2008) (quoting *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)). "Failure to apply the correct legal standards is grounds for reversal." *Id.* (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). However, provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). In other words, "[w]here the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

## DISCUSSION

In this case, the ALJ found that the Claimant met the special insured status requirements of the Social Security Act through December 31, 2020. Tr. 200. At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2012, the alleged disability onset date. Tr. 200. At step two, the ALJ determined that Plaintiff had the following severe mental impairments: an adjustment disorder with mixed anxiety and depression; anxiety; agoraphobia; a panic disorder with agoraphobia; and post-traumatic stress disorder ("PTSD"). Tr. 201. The ALJ also noted that although Plaintiff had several

non-severe physical impairments, those non-severe impairments did not create any additional functional or exertional limitations. Tr. 201.

At step three of the process, the ALJ determined that Plaintiff's mental impairments, considered either individually or in combination, did not meet or medically equal the criteria of Mental Disorder listings 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders) in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 201. In assessing the severity of Plaintiff's mental impairments, the ALJ found Plaintiff has a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a moderate limitation for adapting or managing oneself. Tr. 201–203. The ALJ noted that these findings satisfied neither the "Paragraph B" or "Paragraph C" criteria for Mental Disorders.[3] Tr. 203.

Then, before proceeding to step four, the ALJ made a determination of Plaintiff's residual functional capacity. "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused

---

[3] Under Section 12.00 of 20 C.F.R. Pt. 404, Subpt. P, App. 1, an individual must typically meet the requirements of both paragraphs A and B of a particular listing, or the requirements of both paragraphs A and C. The "Paragraph A" requirements are specific medical criteria of the particular mental disorder. The "Paragraph B" requirements are functional criteria: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. The "Paragraph C" requirements are the criteria used to evaluate "serious and persistent mental disorders," which involve a medically documented history of the existence of the disorder over a period of at least 2 years.

by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945. After careful consideration of the entire record, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but that Plaintiff:

> [W]ould be off task approximately 20 minutes in 8-hour workday due to panic attacks. The claimant can only perform simple, routine work and make simple workplace decisions not at a production rate . . . pace. She can maintain attention and concentration for 2 hour blocks of time. The claimant can tolerate minimal changes in work place processes and settings. She can tolerate occasional interaction with supervisors, but can interact with the public and coworkers for 10 percent or less in a workday and cannot perform tandem or team work.

Tr. 203.

Based on this RFC, and on the testimony of the vocational expert, the ALJ found that Plaintiff was capable of performing her past relevant work as a Commercial Cleaner. Tr. 209. In the alternative, the ALJ noted that even though Plaintiff's age made her "an individual closely approaching advanced age," there are nevertheless other jobs that exist in significant numbers in the national economy that Plaintiff can perform. *See* 20 C.F.R. § 404.1563, § 416.963. Relying on the vocational expert's testimony, the ALJ found that a person of Plaintiff's age and RFC could perform such unskilled jobs in the national economy as hospital cleaner, laundry worker, or a hand packager. Tr. 211. Hence, the ALJ found Plaintiff *was not* disabled for the purposes of DIB or SSI.   Tr. 211.

In seeking reversal of the Commissioner's decision, Plaintiff makes two arguments. First, Plaintiff argues that the ALJ provided insufficient reasons for discounting the opinions of Plaintiff's treating sources. Pl. Mem. of Law, 8–14, Nov.

13, 2019, ECF No. 10-1. Second, Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. Pl. Mem. of Law, 14–17. The Commissioner disputes Plaintiff's contentions and maintains that the ALJ's decision is free of legal error and supported by substantial evidence.

The "Treating Physician Rule"

In this case, Plaintiff points out that:

> three mental health providers submitted functional assessments regarding Plaintiff's mental impairments. Treating psychiatrist Dr. Reyes opined on May 30, 2016 and July 28, 2016 that Plaintiff was unable to work around others due to severe anxiety. Treating psychiatrist [sic] nurse practitioner NPP Page . . . opined Plaintiff was very limited in her ability to maintain attention/concentration, moderately-to-very limited in her ability to maintain socially appropriate behavior without exhibiting behavior extremes and . . . to function in a work setting at a consistent pace, and moderately limited in her ability to understand and remember instructions, carry out instructions, make simple decisions, and interact appropriately with others. Treating counselor Ms. Psyz completed a medical source statement and opined Plaintiff was unable to meet competitive standards for all mental demands for work and would likely miss more than four days of work per month due to her impairments or treatment.

Pl. Mem. of Law at 9–10 (citations to the record omitted). Plaintiff notes that the ALJ afforded only "some weight" to each of these opinions, and argues that the ALJ's reasoning for discrediting these opinions is unsupported. Pl. Mem. of Law at 10.

"[I]t is well settled that the ALJ is not permitted to substitute her own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008). Hence, for claims filed before March 27, 2017, 20 C.F.R. § 404.1527 requires that the

"treating physician rule" be applied when determining a claimant's disability status.

§ 404.1527(c)(1) provides that, generally speaking, the medical opinion of a source

who has examined the claimant is entitled to greater weight than a source who has

not. Further, 20 C.F.R. § 404.1527(c)(2) states:

> Generally, we give more weight to opinions from your treating sources,
> since these sources are likely to be the medical professionals most able
> to provide a detailed, longitudinal picture of your medical impairment(s)
> and may bring a unique perspective to the medical evidence that cannot
> be obtained from the objective medical findings alone or from reports of
> individual examinations, such as consultative examinations or brief
> hospitalizations. If we find that a treating source's medical opinion
> on the issue(s) of the nature and severity of your impairment(s) is well-
> supported by medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other substantial evidence
> in your case record, we will give it controlling weight.[4]

Nonetheless, the Second Circuit has cautioned that "[a] treating physician's

statement that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*,

177 F.3d 128, 133 (2d Cir. 1999).

### Dr. Reyes, M.D.

Noting that Dr. Reyes was both a treating medical source and a specialist, the

ALJ gave "some weight" to Dr. Reyes' opinion that Plaintiff could not work around

people due to severe anxiety. Tr. 207. In that regard, the ALJ explained that Dr.

Reyes did not answer the functional limitation questions on the July 2016

assessment, and that Plaintiff's testimony as to her activities of daily living – grocery

shopping with her daughter, going to church with her mother, and taking the metro-

---

[4] For claims filed after March 27, 2017, the rules in § 404.1520c apply to the evaluation of opinion evidence.

rail to the hearing – was inconsistent with Dr. Reyes' assessment of Plaintiff's impairments around people. Tr. 207. Plaintiff argues that the ALJ mischaracterized the claimant's testimony about her activities of daily living, and in any event that the ALJ's reliance on that testimony to discount Dr. Reyes' opinion was improper. Pl. Mem. of Law at 11. The Court disagrees.

The regulations require that a treating source's medical opinion be controlling *only* if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527(c)(2). Where the treating source's medical opinion does not meet these criteria, the ALJ is required to give "good reasons" for the weight assigned to the opinion. *Id.* The ALJ must determine the weight of the opinion by analyzing the so-called *Burgess* factors: length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability of the opinion by relevant evidence, consistency with the record as a whole, the source's level of specialization, and other relevant factors. *See Burgess*, 537 F.3d at 131 (citing 20 C.F.R. § 404.1527(c)).

An ALJ's failure to explicitly apply the *Burgess* factors when assigning weight to a treating physician's opinion is a procedural error. *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (citing *Selian v. Astrue*, 708 F.3d 409, 419–20 (2d Cir. 2013)). Nevertheless, if "a searching review of the record" assures the reviewing court that the procedural error was harmless, and "that the substance of the treating physician

rule was not traversed," then the reviewing court will affirm the ALJ's decision. *Estrella*, 925 F.3d at 96 (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

The Court finds that the ALJ in this case committed procedural error because she did not expressly consider all of the *Burgess* factors with respect to Dr. Reyes' opinion. In her discussion of Dr. Reyes' opinion, the ALJ did identify that Dr. Reyes was a specialist, and noted that Dr. Reyes' opinion was not supported by relevant evidence because she did not provide a specific functional assessment, and her opinion was inconsistent with Plaintiff's testimony. Tr. 207. However, the ALJ did not expressly address the length of the treatment relationship, frequency of examination, or nature and extent of the treatment relationship.

Nevertheless, the Court's searching review of the record reveals that the substance of the treating physician rule was not traversed. To begin with, prior to specifically addressing Dr. Reyes' opinion, the ALJ's decision thoroughly recounted Plaintiff's medical history, including abundant references to the relevant treating sources in the record. *See,* Tr. 201–203 (conducting the "special technique" for assessing medical impairments); Tr. 205–207 (discussing the medical history in chronological order). Moreover, Dr. Reyes' treatment notes themselves indicate less than a dozen sessions, typically of approximately fifteen minutes, concerned with medication management. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (noting that when "the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented

16

to him . . . .").

Although Plaintiff cites a decision from another court in this district to support her argument that the ALJ's treatment of Dr. Reyes' opinion was improper, the Court finds that case readily distinguishable. In *Woodling v. Comm'r of Soc. Sec.*, 2018 WL 4468824, at *6 (W.D.N.Y. Sept. 18, 2018), the reviewing court found an ALJ's decision in error where he gave "little weight" to a treating physician's opinion, and that treating physician was a specialist who had completed multiple medical source statements over a period spanning many months, with very specific functional findings in each statement, identifying a number of different limitations. *Woodling*, 2018 WL 4468824 at *3–6. Here, Dr. Reyes failed to complete the specific mental functional assessment portion of her statements, and rendered a general opinion based only on the limitation imposed by Plaintiff's anxiety around people. Moreover, the ALJ did not discount Dr. Reyes' opinion entirely, but only declined to give it controlling weight.

*Nurse Practitioner Page & Licensed Mental Health Counselor Pysz*

The ALJ also declined to give controlling weight to the opinions of nurse practitioner Page and licensed mental health counselor Pysz. Tr. 207–208. NP Page had assessed Plaintiff as moderately to very limited in a number of specific functional areas, but the ALJ gave her opinion "some weight" because NP Page is not an acceptable medical source, and the medical evidence, Plaintiff's testimony, and Plaintiff's daily activities did not support the severe limitations NP Page identified.

Tr. 208. Ms. Pysz had identified a multitude of severe limitations, too, but the ALJ gave Ms. Pysz's assessment only "some weight" because Ms. Pysz is also not an acceptable medical source, and her assessment was not consistent with the medical evidence as a whole or with Plaintiff's activities of daily living. Plaintiff argues that such did not constitute sufficient reasons for discounting the opinions of NP Page and Ms. Pysz. Pl. Mem. of Law at 13.

As the ALJ rightly indicated, neither NP Page nor Ms. Pysz are "acceptable medical sources" under the regulations, whose opinions would be entitled to controlling weight. *Monette v. Colvin*, 654 F. App'x 516, 518 (2d Cir. 2016) (citing 20 C.F.R. § 404.1513(a), (d)(1)). "While the opinions of nurse practitioners may be considered as to the severity of plaintiff's impairment and how it affects his ability to work, such opinions do not warrant the same deference as those of treating physicians." *Lovell v. Colvin*, 137 F. Supp.3d 347, 353 (W.D.N.Y. 2015). Similarly, as a licensed mental health counselor, Ms. Pysz, is not an acceptable source under the regulations. *Feliciano o/b/o D.F. v. Comm'r of Soc. Sec.*, No. 1:18-CV-00502 EAW, 2020 WL 1815754, at *3 (W.D.N.Y. Apr. 10, 2020). Nevertheless, an ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ]'s reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2); *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp.2d 335, 344 (E.D.N.Y. 2010).

18

Here, the ALJ assigned the opinions of NP Page and Ms. Pysz "some weight," which was the same degree of weight the ALJ assigned to the medical opinions of Dr. Reyes, the treating psychiatrist, and Dr. Santarpia, the consultative examiner. Further, the ALJ provided an explanation – that the sources were not acceptable medical sources, and that their opinions were not consistent with the medical record as a whole – for her decision not to assign controlling weight to each of these decisions. A review of the record indicates ample justification for the ALJ's conclusion that the opinions were not consistent with the record. As an obvious example, the Court notes that the opinions of NP Page and Ms. Pysz are inconsistent with the findings of Dr. Santarpia, and that even Ms. Pysz's two medical source statements are not entirely consistent with each other, with the statement provided at the request of Plaintiff's attorney in 2018 markedly more severe than that provided in October 2017.

Accordingly, the Court finds the ALJ did not traverse the treating physician rule in her weighting of Dr. Reyes' opinion, and did not commit error in her weighting of the opinions of NP Page and Ms. Pysz.

<u>Substantial Evidence</u>

Plaintiff also argues that the ALJ's mental RFC determination was not supported by substantial evidence. Pl. Mem. of Law at 14. Specifically, Plaintiff notes that the ALJ assigned "some weight" to all of the medical opinions in the record, and failed to reconcile the conflicts between each of these medical opinions and the RFC. Pl. Mem. of Law at 15.

As indicated above, provided the correct legal standards are applied, a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

To determine whether a finding, inference or conclusion is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)). The reviewing court will defer to the Commissioner where his finding is supported by substantial evidence, as it is not the reviewing court's function to determine *de novo* whether a plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012).

Where the record contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, the ALJ need not select a single right opinion and make an RFC finding based solely on that opinion. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017). Rather, in making a determination of a claimant's RFC, the ALJ must "weigh all of the evidence available to make an RFC

finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

Here, although the ALJ ultimately assigned only "some weight" to the opinions of Dr. Reyes, Dr. Santarpia, NP Page and Ms. Pysz, her decision demonstrates that she carefully considered both the opinions and treatment notes of each source. For instance, not only did the ALJ consider Dr. Reyes' medical source statement indicating that Plaintiff could not work around people (Tr. 207), she also considered the "mini-mental status examinations" in Dr. Reyes' treatment notes, many of which were "unremarkable" (Tr. 206). In addition, the ALJ considered NP Page's assessments in May and August 2017 that suggest Plaintiff had moderately limited to very limited abilities in several domains of mental functioning (Tr. 207), but noted that treatment notes from her primary care physician from the same period include mini-mental status examinations that are within normal limits (Tr. 206–207). Further, while noting the severe limitations assessed by Ms. Pysz in 2018 (Tr. 208), the ALJ pointed out that a mental status examination by Ms. Pysz in late 2017 "revealed an anxious mood, but the remainder of the examination was unremarkable" (Tr. 207). Because the ALJ reached her RFC determination based on a comprehensive review of both sides of the evidence in the record, the Court finds that the ALJ's determination was adequately supported by substantial evidence.

CONCLUSION

In sum, the Court finds that the ALJ's decision applied the appropriate legal

standards, and rests on adequate findings supported by evidence having rational probative force. Accordingly, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings (ECF No. 10) is denied, and the Commissioner's motion (ECF No. 13) is granted.   The Clerk of Court is directed to close this case.


DATED:      September 14, 2020
            Rochester, New York


                          /s/ Charles J. Siragusa
                          CHARLES J. SIRAGUSA
                          United States District Judge